**Vicki M. Smith**, OSB No. 015110
Email: smith@csw-law.com
**Skip Winters**, OSB No. 944669
Email: winters@csw-law.com
CHINN SMITH WINTERS LLP
4248 Galewood Street
Lake Oswego, Oregon 97035
Telephone: (503) 675-4306
Facsimile: (503) 386-2086

**Mary Butler**, OSB No. 212645
Email: mary.butler@wilsonelser.com
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
520 Pike Street, Suite 2350
Seattle, WA 98101
Direct: (206) 508-5673
Main: (206) 709-5900
Facsimile: (206) 709-5901

Of Attorneys for Defendants Topgolf USA Hillsboro, LLC and Topgolf International, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **KENDAL SPENCER, an individual**,<br><br>Plaintiff,<br><br>v.<br><br>**TOPGOLF USA HILLSBORO, LLC, a Delaware limited liability company, and TOPGOLF INTERNATIONAL, INC., a Delaware corporation**,<br><br>Defendants. | Case No. 3:25-cv-00353-AN<br><br>**DEFENDANTS' TOPGOLF USA HILLSBORO, LLC AND TOPGOLF INTERNATIONAL, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Pursuant to Fed. R. Civ. P. 56, L.R. 56<br><br><u>Request for Oral Argument</u> |

## CERTIFICATE OF COMPLIANCE WITH L.R .7-1

Pursuant to LR 7-1(a)(1)(A), counsel for Defendants Topgolf USA Hillsboro, LLC and Topgolf International, Inc. (collectively "Topgolf") spoke with Plaintiff's counsel, and



**Chinn Smith Winters LLP**
4248 Galewood Street
Lake Oswego, OR 97035
Phone: (503) 675-4306
Fax: (503) 386-2086

the parties made a good faith effort to resolve the disputes addressed in this motion but were unable to do so.

## MOTION

Defendants Topgolf seek partial summary judgment on Plaintiff Kendal Spencer's strict liability claim for an abnormally dangerous activity. Under Oregon law, the court decides whether an activity qualifies as ultrahazardous or abnormally dangerous.

In support of this motion, Topgolf relies on the Fed. R. Civ. P. 56, the Declaration of Courtney Halbrook, the Declaration of Dr. John O. Spengler, the Declaration of Vicki M. Smith, and the pleadings and papers on file with this Court.

## INTRODUCTION

Plaintiff Spencer's strict liability claim fails as a matter of law. Oregon law reserves strict liability for a narrow class of activities that present a risk of harm of exceptional magnitude or probability even when the utmost care is exercised. Recreational golf, for self-evident reasons, falls far outside that narrow class.

The risk Spencer alleges—a third party's accidental release of a golf club—arises from participant conduct, not from an extraordinary, uncontrollable hazard inherent in recreational golf. Misuse or momentary loss of control by a third party cannot transform an ordinary recreational activity into the kind of extraordinary hazard required for strict liability. And the record confirms that the risk Spencer identifies from recreational golf can be materially reduced through the exercise of reasonable care, which defeats strict liability.

Golf—whether played on a golf course or at an off-course venue like a driving range—is a widespread and accepted recreational activity, not an extraordinary, exceptional, or abnormal hazard. That too defeats strict liability as a matter of law.



**Chinn Smith Winters LLP**
4248 Galewood Street
Lake Oswego, OR 97035
Phone: (503) 675-4306
Fax: (503) 386-2086

Spencer's strict liability claim rises or falls on this legal classification, and the material facts relevant to that classification are not genuinely disputed. The Court should grant partial summary judgment and dismiss Spencer's strict liability claim.

## FACTUAL BACKGROUND

### A. Topgolf operates a recreational golf-entertainment facility in Hillsboro, Oregon.

Topgolf operates a golf-entertainment facility in Hillsboro, Oregon, that offers a driving range combined with food, beverage, and seating areas. Complaint, ECF [1], ¶ 7. Golf driving ranges are a common recreational activity in Oregon and throughout the United States. Spengler Decl., ¶ 2. Millions of Americans participate in golf annually, including off-course golf activities such as driving ranges. *Id.* And Topgolf's facility operates for the same recreational purpose as a traditional driving range: allowing patrons to hit golf balls in an outdoor range using regulation golf clubs. Complaint, ECF [1], ¶¶ 7, ¶ 25; Smith Decl., Ex. 1 (Halbrook Dep.), 88:18-19, 25; 89:1.

The activity Topgolf offers at its facilities involves the ordinary use of golf clubs, which are standard sporting equipment used by millions of participants every year. Smith Decl., Ex. 1, 88:18-19, 25; 89:1; Spengler Decl., ¶¶ 2-3. The risk that a golf ball may travel in an unintended direction or that a golfer may lose control of a club is inherent in the sport of golf and exists at traditional golf courses and driving ranges alike, regardless of the setting or location. Spengler Decl., ¶ 4.

Topgolf's Oregon facility has several separate areas a patron may visit, including individual hitting bays. Complaint, ECF [1], ¶¶ 7, 10. Each bay contains a defined hitting area and a separate seating area. *Id.* ¶ 10. Patrons choose when to stand in the hitting area and when to remain in the seating area, and patrons are directed and required not to stand near active swings. Halbrook Decl., ¶ 2. They may refrain from swinging clubs



**Chinn Smith Winters LLP**
4248 Galewood Street
Lake Oswego, OR 97035
Phone: (503) 675-4306
Fax: (503) 386-2086

and may leave the hitting or seating areas if they do not wish to be exposed to the inherent risks of golf activity. Smith Decl., Ex. 1, 154:12-25; 155:1-3, 15-17.

### B. Topgolf actively takes steps to minimize risk to its patrons, and patrons also can reduce risk.

The risks associated with swinging golf clubs can be and routinely are reduced through the exercise of reasonable care by individual participants, including maintaining proper grip, swing control, and awareness of surroundings. Spengler Decl., ¶ 4. Participants retain control over their own conduct, including whether to swing a club, how to swing, and whether to position themselves near others who are swinging. Halbrook Decl., ¶¶ 2, 3.

Topgolf does not direct or control the precise way individual patrons swing golf clubs. *Id.* ¶ 3. Topgolf does not perform the physical activity that creates the risk; rather, any risk arises from the independent actions of patrons using ordinary sports equipment in the manner intended for the sport of golf. Halbrook Decl., ¶ 3; Spengler Decl., ¶ 4.

Topgolf provides conspicuous warnings advising patrons that participation in golf activity may involve risks associated with errant golf balls or clubs. Smith Decl., Ex. 1, 154:12-25; 155:1-3, 15-17; *see also* Complaint, ECF [1], ¶ 20. These warnings allow patrons to make informed decisions about whether to participate in the activity or enter the golf area. Smith Decl., Ex. 1, 154:12-25; 155:1-3, 15-17; Complaint, ECF [1], ¶ 20. Patrons voluntarily choose whether to engage in or observe golf activity after being advised of these inherent, obvious risks. Smith Decl., Ex. 1, 154:12-25; 155:1-3, 15-17; Complaint, ECF [1], ¶ 20.

Incidents involving the accidental release of a golf club during ordinary golf play are rare, atypical, and not an expected or inherent occurrence of recreational golf activity. Spengler Decl., ¶ 6. Absent the misuse or loss of control by an individual participant, recreational golf does not present a risk of serious harm that predictably or regularly



**Chinn Smith Winters LLP**
4248 Galewood Street
Lake Oswego, OR 97035
Phone: (503) 675-4306
Fax: (503) 386-2086

manifests during normal play. *Id.* Instead, the type of incident alleged by Spencer reflects an atypical instance of participant error, not a danger that occurs when participants act carefully. *Id.* ¶ 7.

### C. Spencer voluntarily visited the Hillsboro Topgolf facility and alleges she was unintentionally struck by a golf club released by another patron.

Spencer visited the Hillsboro Topgolf facility voluntarily as a recreational patron. Complaint, ECF [1], ¶ 21. She was seated in the seating area of a bay when she was struck by a golf club that had been unintentionally released by another patron swinging a club in a different bay. *Id.* ¶ 23. That patron's release of the club was accidental and occurred during ordinary participation in the sport of golf. *Id.* ¶¶ 23–27.

Topgolf did not direct, encourage, or participate in the act that caused Spencer's alleged injury. *See generally* Complaint, ECF [1], ¶¶ 25-26; Halbrook Decl., ¶ 3. The injury resulted from a single, unintended act by another patron using a golf club for its intended recreational purpose. Complaint, ECF [1], ¶¶ 23–27.

### D. Spencer alleges that Topgolf's recreational golf-entertainment services are an "abnormally dangerous activity."

Spencer sued Topgolf. Spencer asserts, among other things, a strict liability claim under the theory that Topgolf's service offering is an abnormally dangerous activity. *Id.* ¶¶ 35–46.

## ARGUMENT AND AUTHORITY

### A. The Court may resolve Plaintiff's strict liability claim as a matter of law on partial summary judgment.

A district court may grant partial summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).



**Chinn Smith Winters LLP**
4248 Galewood Street
Lake Oswego, OR 97035
Phone: (503) 675-4306
Fax: (503) 386-2086

Plaintiff's strict liability claim turns on whether Topgolf's recreational golf-entertainment services constitute an "ultrahazardous" or "abnormally dangerous" activity. Complaint, ECF [1], ¶¶ 35–46. Under Oregon law, that determination is a legal question for the court. *Ellis v. Ferrelgas, L.P.*, 211 Or. App. 648, 653, 156 P.3d 136 (2007) (citing *Loe et ux. v. Lenhard*, 227 Or. 242, 249, 362 P.2d 312 (1961)).

Plaintiff's strict liability theory rises or falls on a legal classification of Topgolf's services, and Oregon confines that doctrine to genuinely extraordinary hazards, so this Court may resolve that claim on summary judgment.

**B. Oregon law focuses on whether an activity poses an abnormal hazard—a risk of harm of exceptional magnitude or probability despite the utmost care.**

Oregon courts look to the *Restatement (Second) of Torts* § 520 factors as a guide in evaluating whether an activity is "ultrahazardous" or "abnormally dangerous." *See Id.* Those factors include:

(a) The existence of a high degree of risk of harm;

(b) The likelihood that resulting harm will be great;

(c) The inability to eliminate the risk by the exercise of reasonable care;

(d) The extend to which the activity is not a matter of common usage;

(e) The inappropriateness of the activity to the place where it is carried on; and

(f) The extent to which its value to the community is outweighed by its dangerous attributes.

*Id.*

But Oregon law does not require a mechanical factor-by-factor analysis. Nor does it permit strict liability to expand beyond activities presenting extraordinary hazards. The Oregon Supreme Court has emphasized that the core inquiry is whether the activity presents an "abnormal hazard"—one whose potential for grave harm remains exceptional in magnitude or probability even when the utmost care is exercised. *See Koos v. Roth*,



**Chinn Smith Winters LLP**
4248 Galewood Street
Lake Oswego, OR 97035
Phone: (503) 675-4306
Fax: (503) 386-2086

293 Or. 670, 681–82, 652 P.2d 1255 (1982). That court has also cautioned against treating "value to the community" as a freestanding balancing test in strict liability cases, explaining that this factor involves subjective determinations about utility or value. *Id.*

As shown below, under these controlling principles, Topgolf's recreational golf-entertainment services, as a matter of law, are not abnormally dangerous. Plaintiff's strict liability claim should thus be dismissed.

**C. Recreational golf is not an abnormally dangerous activity.**

An activity is "abnormally dangerous" only if its "extraordinary, exceptional, or abnormal nature" creates a risk of serious harm that cannot be eliminated through the exercise of reasonable care. *McLane v. Nw. Nat. Gas Co.*, 255 Or. 324, 328–29, 467 P.2d 635 (1970); *accord Bella v. Aurora Air, Inc.*, 279 Or. 13, 24, 566 P.2d 489 (1977) (holding that an activity may be deemed abnormally dangerous where it can be conducted only with a "substantially uncontrollable likelihood that damage will sometimes occur").

That limitation is fundamental to the strict liability doctrine and reflects how narrowly that doctrine is confined. Strict liability applies only where the risk created by an activity is so inherently uncontrollable that even the utmost care cannot meaningfully reduce the danger. *See Lenhard*, 227 Or. at 249. Where participants can reduce the risk associated with an activity through the exercise of reasonable care, strict liability does not apply. *See McLane*, 255 Or. at 329–30. The law thus distinguishes between abnormal hazards—those that create an additional, unavoidable risk to others—and "normal" risks that are "mutually created and borne by all," which do not create strict liability. *Id.*

Critically, the law does not extend strict liability to a defendant's providing a lawful product or service where the alleged danger arises from subsequent use or misuse by third parties. *Burkett v. Freedom Arms Inc.*, 299 Or. 551, 555–58, 704 P.2d 118 (1985).



**Chinn Smith Winters LLP**
4248 Galewood Street
Lake Oswego, OR 97035
Phone: (503) 675-4306
Fax: (503) 386-2086

Nor does recreational golf present a risk of harm of exceptional magnitude or probability. Oregon courts have made clear that strict liability is reserved for activities whose dangers are extraordinary in kind—those in which harm can be expected to occur even when all participants act carefully. *See McLane*, 255 Or. at 328–29. The harm Spencer alleges comes nowhere close to fitting that description. It arose from an isolated instance of participant error during ordinary play of a common sport, not from a danger that predictably or regularly accompanies the activity itself. That kind of sporadic, participant-dependent risk does not make golf an abnormally dangerous activity.

**1. Precedent forecloses strict liability based on third party use or misuse of a golf club.**

In *Burkett*, the Oregon Supreme Court declined to hold that the design, manufacture, sale, and marketing of a small, easily concealable handgun was abnormally dangerous as a matter of law. *Burkett*, 299 Or. at 555–58. It explained that although the *use* of a handgun might be dangerous in some circumstances, imposing strict liability on the manufacturer for engaging in an allegedly abnormally dangerous activity—apart from the subsequent use or misuse of the product—would be contrary to established law across the country. *Id.*

Spencer's strict liability theory presents the same problem and fails for the same reason. She asks this Court to determine as a matter of law that Topgolf's service offering of recreational golf is abnormally dangerous. But at most, her allegations describe injury resulting from the way a third-party patron handled ordinary sporting equipment—misuse of the activity by an individual participant—rather than an extraordinary hazard inherent in Topgolf's service offering itself. Under *Burkett*, that distinction is fatal to a strict liability claim.

/ / /

/ / /



**Chinn Smith Winters LLP**
4248 Galewood Street
Lake Oswego, OR 97035
Phone: (503) 675-4306
Fax: (503) 386-2086

2. **Topgolf's expert testimony demonstrates that the risks can be reduced through participants' exercise of reasonable care.**

The Oregon Supreme Court has rejected strict liability theories where the alleged risk may be eliminated or reduced through the exercise of reasonable care. *See Hudson v. Peavey Oil Co.*, 279 Or. 3, 8, 566 P.2d 175 (1977) (holding that strict liability did not apply because the evidence did not establish that "the risk of [gasoline] seepage cannot be eliminated by the exercise of reasonable care"); *Nicolai v. Day*, 264 Or. 354, 358, 506 P.2d 483 (1973) (holding that defendants' conduct did not constitute an ultrahazardous activity where the plaintiff conceded that defendants "had the ability to prevent the harm," a landslide, and could eliminate the risk through precautions).

The risk alleged by Spencer—the accidental release of a golf club—is inherent in the sport of golf and depends on how individual participants handle ordinary sporting equipment. Those risks can be and routinely are reduced through reasonable care, including proper grip, controlled swinging, situational awareness, and appropriate positioning. Spengler Decl., ¶ 4. Because the alleged risk is neither unavoidable nor uncontrollable, recreational golf cannot qualify as an abnormally dangerous activity as a matter of law.

3. **Spencer's allegations confirm that the risks she alleges were ordinary, participant-dependent risks reducible through reasonable care, defeating strict liability.**

Spencer's allegations and testimony confirm that the risk she identifies is participant-dependent and reducible through reasonable care. That is incompatible with strict liability.

First, Spencer's characterization of Topgolf's "service offering" shows that it is not an abnormally dangerous activity. *See* Complaint, ECF [1], ¶ 36. She alleges that Topgolf's service offering is "open to anyone," including participants who do not possess



**Chinn Smith Winters LLP**
4248 Galewood Street
Lake Oswego, OR 97035
Phone: (503) 675-4306
Fax: (503) 386-2086

the requisite golfing skill to reduce risk. *Id.* At her deposition, she echoed that point, suggesting that the incident resulted from another participant's lack of skill or ability. Smith Decl., Ex. 2 (Spencer Dep.), 121:9–23 ("I think you put...athletic equipment in the hands of someone who is not athletic or knows how to use it properly...[and] it went right out of his hands."). Those allegations and Spencer's testimony confirm that the relevant risk is participant-dependent and thus amenable to reduction through reasonable care.

Second, Spencer repeatedly suggests that Topgolf could have installed or maintained additional "safety features" to reduce risk. Complaint, ECF [1], ¶¶ 18–19. Those allegations rest on the premise that the risk can be reduced through exercising reasonable care. Although Topgolf disputes that those allegations support a negligence claim, they necessarily defeat a strict liability claim because an activity whose risks can be "eliminated" through specific precautions is, by definition, not an abnormal hazard that persists despite the utmost care. *See Koos*, 293 Or. at 681–82.

Finally, Spencer's testimony reflects that the risks associated with golf are ordinary and widely shared, not extraordinary or abnormal. She acknowledged that she was aware—well before visiting Topgolf—that golf involves the risk of being struck by equipment or objects, testifying that her father had been "whacked in the forehead" while playing golf when she was young. Smith Decl., Ex. 2, 109:14–21. That testimony reinforces that the alleged risk is a familiar, inherent feature of the sport of golf, not an "additional" or exceptional hazard arising from an unusual activity. Under *McLane*, such ordinary risks—those that are "mutually created and borne by all"—do not support strict liability. *McLane*, 255 Or. at 329–30.

**D. Golf and driving-range play are matters of common usage and cannot be abnormally dangerous as a matter of law.**

Spencer's strict liability claim independently fails for another reason: recreational golf—whether on a traditional course or in an off-course venue like a driving range—is a



**Chinn Smith Winters LLP**
4248 Galewood Street
Lake Oswego, OR 97035
Phone: (503) 675-4306
Fax: (503) 386-2086

matter of common usage and well outside the narrow class of activities Oregon courts have treated as abnormally dangerous.

An activity is abnormally dangerous only if it is "extraordinary, exceptional, or abnormal" in nature and not a "normal risk" that is "mutually created and borne by all." *McLane*, 255 Or. at 328–30. Consistent with that limiting principle, activities that are matters of common usage—"widespread and accepted"—are not abnormally dangerous. *Koos*, 293 Or. at 682. And Oregon's strict liability doctrine does not turn on a court's subjective weighing of whether an activity is "valuable" or worthwhile enough to justify its risks. The question is whether the activity presents an abnormal hazard of exceptional magnitude or probability despite the utmost care. *Id.* at 681–82.

*Koos* also illustrates the relevant line-drawing by identifying the kinds of activities deemed as abnormally dangerous: the escape of stored water, blasting, the storage or use of highly explosive materials (including gas vapors in populated areas), and aerial crop-dusting with destructive chemicals. *Id.* at 674. Those activities involve hazards that are extraordinary in nature and persist even when precautions are taken. *See id. Koos* contrasts those cases with routine, common-usage activities—such as the distribution of water, gas, and electricity—that do not trigger strict liability merely because they carry some risk. *Id.* at 682. Off-course golf activities like driving ranges and golf-entertainment venues fall decisively on the "common usage" side of that line.

Oregon is far from alone in ruling out golf as an abnormally dangerous activity. *See Mauri v. Smith*, 135 Or. App. 662, 672, 901 P.2d 247 (1995), *aff'd in part and rev'd in part on other grounds*, 324 Or. 476, 929 P.2d 307 (1996) (explaining that Oregon courts view analogous decisions from other jurisdictions interpreting the *Restatement* as persuasive authority). Numerous courts applying § 520 have concluded that recreational golf is not an abnormally dangerous activity. *See, e.g.*, *Ludwikoski v. Kurotsu*, 840 F.



**Chinn Smith Winters LLP**
4248 Galewood Street
Lake Oswego, OR 97035
Phone: (503) 675-4306
Fax: (503) 386-2086

Supp. 826, 829 (D. Kan. 1993) (holding that golf does not qualify as abnormally dangerous under Kansas law because its risks are ordinary, participant-dependent, and amenable to control through reasonable care); *Carrigan v. Roussell*, 177 N.J. Super. 272, 279, 426 A.2d 517 (App. Div. 1981) (rejecting strict liability for injuries caused during golf play as "contrary to all authority"); *see also Thomas v. Wheat*, 143 P.3d 767, 770 (Okla. Civ. App. 2006) ("The game of golf is not an inherently dangerous game."). These decisions reinforce that recreational golf does not present the kind of extraordinary, uncontrollable hazard necessary to support strict liability.

Golf is a longstanding, widely practiced recreational activity played by millions of participants across the United States, including millions who engage in off-course golf activities such as driving ranges and golf-entertainment venues like Topgolf. Spengler Decl., ¶ 2. Those off-course activities regularly operate near residential and commercial areas, underscoring that Topgolf's Hillsboro facility is not an "extraordinary" or "abnormal" use in its setting. *Id*.

That level of widespread and accepted participation confirms that recreational golf is not an extraordinary, exceptional, or abnormal activity under Oregon law. That golf is played at an off-course venue does not transform a common recreational activity into an extraordinary or abnormal hazard. Treating driving-range golf as abnormally dangerous would extend strict liability far beyond the narrow class of extraordinary hazards Oregon has recognized.

## CONCLUSION

The Court should grant partial summary judgment and dismiss Spencer's strict liability claim. Oregon reserves strict liability for a narrow class of activities that presents an extraordinary and uncontrollable hazard—one that creates a risk of grave harm that



**Chinn Smith Winters LLP**
4248 Galewood Street
Lake Oswego, OR 97035
Phone: (503) 675-4306
Fax: (503) 386-2086

persists even when the utmost care is exercised. Topgolf's recreational golf-entertainment services fall far outside that category.

The risk Spencer alleges arises from participant conduct using ordinary sporting equipment and is amenable to reduction through reasonable care, so it is not an abnormal hazard under Oregon law. Golf—whether played on a traditional course or at an off-course venue like a driving range—is a widespread and accepted recreational activity. And treating golf as abnormally dangerous would improperly expand strict liability beyond the narrow bounds Oregon courts have recognized.

Respectfully submitted this 30th day of April, 2026.

BY: Vicki M. Smith

Vicki M. Smith, OSB No. 015110
Email: smith@csw-law.com
Skip Winters, OSB No. 944669
Email: winters@csw-law.com
CHINN SMITH WINTERS LLP
Phone: (503) 675-4306
Fax: (503) 386-2086

Mary Butler, OSB No. 212645
Email: mary.butler@wilsonelser.com
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
Direct: (206) 508-5673
Main: (206) 709-5900
Fax: (206) 709-5901

Attorneys for Defendants Topgolf USA Hillsboro, LLC and Topgolf International, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing **DEFENDANTS' TOPGOLF USA HILLSBORO, LLC AND TOPGOLF INTERNATIONAL, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** on the following attorneys on the date noted below via the following method:

Anne D. Foster
Samuel T. Smith
Jaimee R. King
Smith Foster King LLP
3330 NW Yeon Ave., Suite 240
Portland, OR 97210
Fax: (503) 961-1616
Email: afoster@sfklegal.com
ssmith@sfklegal.com
jking@sfklegal.com

*Of Attorneys for Plaintiff*

Method:
- ☐ US Mail, postage prepaid
- ☒ Email – Courtesy Copy
- ☐ Facsimile
- ☐ Hand Delivery
- ☒ CM/ECF Electronic Service

Dated this 30th day of April, 2026.

BY: *Vicki M. Smith* ______________________
Vicki M. Smith, OSB No. 015110
Email: smith@csw-law.com
Skip Winters, OSB No. 944669
Email: winters@csw-law.com
Phone: (503) 675-4306
Fax: (503) 386-2086

Attorneys for Defendants Topgolf USA Hillsboro, LLC and Topgolf International, Inc.



**Chinn Smith Winters LLP**
4248 Galewood Street
Lake Oswego, OR 97035
Phone: (503) 675-4306
Fax: (503) 386-2086